KEVIN P.B. JOHNSON (Bar No. 177129)
kevinjohnson@quinnemanuel.com
RAY ZADO (Bar No. 208501)
rayzado@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California, 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

DAVID PERLSON (Bar No. 209502)
davidperlson@quinnemanuel.com
OGNJEN ZIVOJNOVIC (Bar No. 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Petitioners Snowflake
Inc. and Snowflake Computing GmbH*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLICATION OF SNOWFLAKE INC. AND SNOWFLAKE COMPUTING GMBH FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782<br><br>Applicant. | CASE NO.: CV-20 80190 MISC<br><br>**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING AND SUPPORTING MEMORANDUM** |

08673-00014/22523896.1

APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | DISCOVERY SOUGHT IN THIS 1782 APPLICATION | 3 |
| IV. | LEGAL STANDARD | 4 |
| V. | ARGUMENT | 6 |
|   | A. Snowflake's Application Meets Section 1782's Requirements. | 6 |
|   | B. The Supreme Court's *Intel* Factors Strongly Favor Granting Snowflake's Application. | 7 |
|   |     1. Snowflake Seeks Relevant Information That Will Assist the Foreign Court | 7 |
|   |     2. No Foreign Discovery Restrictions Bar Snowflake's Requested Discovery. | 9 |
|   |     3. Snowflake's Discovery Is Narrowly Tailored to Avoid Undue Burden. | 11 |
|   |     4. Yeti is a Party to the Foreign Proceeding but German Courts Have Limited Ability To Order the Production of Documents | 11 |
| VI. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Cryolife, Inc. v. Tenaxis Med., Inc.,*
    No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) .............................. *passim*

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095, 1101 (2d Cir. 1995) ................................................................................ 9

*Heraeus Kulzer v. Biomet,*
    633 F.3d 591 (7th Cir. 2011) ............................................................................. 8, 10, 11

*In re Appl. of Jt. Stock Co. Raiffeisenbank,*
    Case No. 16-mc-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ................ 8

*In re Esses,*
    101 F.3d 873 (2d Cir. 1996) .......................................................................................... 9

*In re Ex Parte Apple Inc.,*
    No. MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012) ...................... 9

*In re Ex Parte LG Elect. Deutschland GmbH,*
    No. 12-cv-1197-LAB(MDD), 2012 WL 1836283 (S.D. Cal. May 21, 2012) ............. 5

*In re Ex Parte Ontario Principals' Council,*
    No. 513MC80237LHKPSG, 2013 WL 6073517 (N.D. Cal. Nov. 8, 2013) ................ 7

*In re Gianasso,*
    No. C 12-80029 MISC SI, 2012 WL 651647 (N.D. Cal. Feb. 28, 2012) .................... 5

*In re Google Inc.,*
    No. 14-MC-80333-DMR, 2014 WL 7146994 (N.D. Cal. Dec. 15, 2014) ................ 7, 9

*In re Illumina Cambridge Ltd.,* No. 19-mc-80215-WHO(TSH),
    2019 WL 5811467 (N.D. Cal. Nov. 7, 2019) ................................................ 6, 8, 9, 12

*In re Int'l Judicial Assistance from the Fourth Civil Court for Intell. And Indus. Property Rights In Istanbul,*
    2015 U.S. Dist. LEXIS 81550 (N.D. Cal. June 22, 2015) ............................................ 8

*In re IPCom GMBH & Co. KG,* Case No. 5:14-mc-80037-EJD-PSG,
    2014 WL 12772090 (N.D. Cal. Apr. 10, 2014) .......................................................... 11

*In re Levi Strauss & Co.,*
    Case No. 18-mc-80123-JSC, 2018 WL 3872790 (N.D. Cal. Aug. 15, 2018) .............. 8

*In re Qualcomm Inc.,*
    Case No. 18-mc-80104-VKD, 2018 WL 3845882 (N.D. Cal. Aug. 13, 2018) ....... 8, 11

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ............................................................................................ *passim*

*Metallgesellschaft v. Hodapp,*
    121 F.3d 77 (2d Cir. 1997) .......................................................................................... 10

*Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-cv-269(LEK/RFT),
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ............................................................. 6, 8, 12

**Statutory Authorities**

28 U.S.C. § 1782 .................................................................................................................. *passim*

Snowflake Inc. and Snowflake Computing GmbH (collectively, "Snowflake") apply to the Court for an order pursuant to 28 U.S.C. § 1782 granting Snowflake leave to obtain targeted discovery from Yeti Data, Inc. (hereinafter, "Yeti") for use in a foreign litigation pending in the Regional Court of Düsseldorf, *Yeti Data, Inc. v. Snowflake Inc. et al.*, Case No. 2a O 152/20 (the "German Action"). Declaration of Ray Zado ("Zado Decl.") at ¶¶ 4-6. Courts within this Circuit have routinely authorized the filing of applications for discovery under 28 U.S.C. § 1782. This application is supported by the memorandum of points and authorities below and the Declarations of Ray Zado and Marcus Grosch, filed concurrently herewith. The proposed order and the subpoena to be served on Yeti are attached as Appendices A and B to the Declaration of Ray Zado[1], respectively.

## I. INTRODUCTION

This Application arises from Yeti's allegation in the German Action that Snowflake is infringing Yeti's European Union trademark, which Snowflake disputes. Pursuant to 28 U.S.C. § 1782, Snowflake seeks discovery from Yeti for use in the German Action, including, inter alia, documents pertaining to Yeti's intent in seeking a European Union trademark on the word "Snowflake," the scope of Yeti's past business presence and future business plans in Europe, and Yeti's knowledge of Snowflake's use of this term in Europe in connection with Snowflake's own business and software. The documents are directly relevant whether Yeti filed for a European Union trademark in "bad faith," i.e., without the intent to use the trademark in commerce, but rather, in order to prevent Snowflake from its fair use of Snowflake's own corporate name. If Yeti filed its trademark application in "bad faith," then its mark is invalid, and there can be no infringement. The documents Snowflake needs to defend itself in the German Action, however, are in the possession of Yeti in the United States, and cannot be obtained in the German Action.

United States courts routinely grant Section 1782 applications for discovery to be used in German litigation, and this Court should do so as well. Snowflake's application satisfies Section

---

[1] More generally, as used herein, Appendices A and B and Exhibits 1-10 refer to the appendices and exhibits attached the declaration of Ray Zado.

1782's three statutory requirements. *First*, this Court is in "the district in which [the] person resides," 28 U.S.C. § 1782(a), because Yeti has its headquarters in Atherton, California; and Yeti has (at least in the past) developed, designed, manufactured, marketed, distributed, offered to sell and/or sold products and services in the State of California and in this District. *Second*, Snowflake seeks the discovery "for use in a proceeding in a foreign . . . tribunal," *id.*, i.e., the Regional Court of Düsseldorf, Germany. *Third*, the Snowflake entities (including both Snowflake Inc. and Snowflake Computing GmbH) qualify as "interested person[s]" in the foreign proceeding because they are named parties in the German Action. *See id.*.

The Supreme Court's *Intel* factors further support Snowflake's request. German courts are receptive to the type of discovery sought by Snowflake, the discovery sought provides key information for the foreign proceeding, and the request is not made to circumvent any limitation on discovery imposed by German courts. In addition, the discovery request is narrowly tailored and is not unduly intrusive or burdensome.

Accordingly, Snowflake respectfully requests that the Court enter the order attached as Appendix A, allowing Snowflake to serve Yeti with the subpoena attached as Appendix B.

## II. BACKGROUND

Founded in 2012, Snowflake is a Delaware limited liability company with its principal place of business in San Mateo, California. Zado Decl., Ex. 3. Under the "Snowflake" corporate name, Snowflake offers customers cloud-based data storage and analytics services, both in the United States and Europe. *Id.*, Ex. 3. Snowflake's founders, who are former Oracle and Microsoft data warehousing experts, chose the Snowflake name as a tribute to their shared love of snow sports and because snowflakes are "born in the cloud" and each one is unique. *Id.*, Exs. 3-4. Snowflake filed an application with the U.S. Patent and Trademark Office for its "Snowflake" trademark on March 23, 2018, and the trademark was registered on November 20, 2018. *Id.*, Ex. 5 (Registration No. 5,610,829). The registration recognizes a first use date of October 2014, and a first use in commerce date of December 2014. *Id.* Snowflake also registered a European Union trademark in "Snowflake" on September 20, 2018. *Id.*, Ex. 6 (Filing No. 1434694).

Yeti is a Delaware corporation with its headquarters in Atherton, California. *Id.*, Ex. 9. Yeti alleges that, in the past, it distributed and marketed data management solutions and data analytics software in the United States, although Snowflake does not have information as to whether Yeti continues to distribute such software products today. *See id.*, Ex. 1 (Yeti C.D. Cal. Complaint), ¶ 12; *see also id.*, Ex. 2.

Yeti first sued Snowflake on July 24, 2020—right as Snowflake was laying the groundwork for its subsequent IPO—in the Federal District Court for the Central District of California. *Yeti Data, Inc. v. Snowflake Inc.*, No. 2:20-cv-06595-PA-AFM (C.D. Cal. July 24, 2020). In that lawsuit, Yeti alleges trademark infringement along with various related business torts under Federal and California law related to Snowflake's alleged misuse of the "Snowflake" mark (including false designation of origin; unfair competition; deceptive business practices; and unjust enrichment). Zado Decl., Ex. 1. Although Snowflake has not yet responded to Yeti's Complaint, Snowflake intends to deny these allegations. Further, Snowflake has moved dismiss the Complaint, or in the alternative, to transfer the case to the Northern District of California, because Yeti filed the Complaint in a district (the Central District) where none of the parties or witnesses reside, as opposed to the district where all the parties are based and the relevant events occurred (the Northern District). *Yeti Data Inc. v. Snowflake Inc.*, Case 2:20-cv-06595, Dkt. No. 15 (Snowflake's Motion to Transfer or Dismiss, filed October 2, 2020).

On July 27, 2020, Yeti also filed a Complaint commencing the German Action in the Regional Court of Düsseldorf, alleging that Snowflake infringes Yeti's purported European Union trademark in the word "Snowflake," which Yeti applied for on January 26, 2018 and registered on May 25, 2018. Zado Decl., Ex. 12 (English translation of Yeti Complaint) at 2; *see also id.*, Ex. 11 (original German Complaint).

### III. <u>**DISCOVERY SOUGHT IN THIS 1782 APPLICATION**</u>

A central issue in the German Action is whether Yeti applied for the "Snowflake" mark in the European Union in 2018 with an intent to use that trademark in commerce or, instead, for the purpose of preventing Snowflake from its fair use of Snowflake's own corporate name in Europe,

APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

which Snowflake has used in Europe continuously since 2016. Grosch Decl., ¶ 9. If Yeti applied for its European Union trademark "Snowflake" in bad faith, then the mark is void, and Snowflake is not liable for trademark infringement.

Accordingly, with the present application, Snowflake seeks various categories of documents relevant to Yeti's intent when applying for the "Snowflake" mark. For example, Snowflake seeks documents relating to whether Yeti was aware of Snowflake's existence and its expansion of operations into Europe in 2017—before Yeti applied for its purported "Snowflake" mark. *See* Zado Decl., Appx. B, Ex. 1, Request Nos. 1-2, 6. Snowflake also seeks Yeti's correspondence, both internally and with third parties, about Snowflake—correspondence which may show Yeti knew about Snowflake's use of the "Snowflake" mark before applying for its purported mark. *Id.*, Request Nos. 3-5. Snowflake further seeks information about Yeti's business plans and presence in Europe, both past and future. *Id.*, Request Nos. 12-17. Finally, Snowflake seeks information regarding Yeti's communications surrounding its trademark applications in the U.S. and Europe, including in particular why Yet sought a trademark on "Yeti Snowflake" in the U.S. (consistent with their use of the mark in commerce), but on "Snowflake" in Europe. *Id.*, Request Nos. 7-11; *see also* Zado Decl., Ex. 7 (Yeti's U.S. trademark on "Yeti Snowflake"); *id.*, Ex. 8 (Yeti's European trademark on "Snowflake"). These categories of documents are each directly relevant to whether Yeti filed its trademark application in good faith or whether the filing was a bad faith attempt at preventing Snowflake from using its own company designation in commerce. Because Yeti has not produced any of these documents in the German Action, nor can be required to produce these documents under applicable German procedural rules, Snowflake seeks access to documents concerning Yeti's pre-2018 knowledge of Snowflake, Yeti's communications about Snowflake, and the other categories of documents relevant to the German Action through this Section 1782 application.

IV. **LEGAL STANDARD**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.*

*Advanced Micro Devices, Inc.* 542 U.S. 241, 247 (2004). Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at 247-249; *see also In re Ex Parte LG Elect. Deutschland GmbH*, No. 12-cv-1197-LAB (MDD), 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012) ("[because] our courts favor broad discovery generally, the Court will authorize the issuance of the requested subpoena [under § 1782]").

Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement may be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). A district court thus has statutory authority to grant a Section 1782 application where "(1) the discovery is sought from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *In re Apple Inc.*, 2012 WL 1570043, at *1; *see also In re Gianasso*, No. C 12-80029 MISC SI, 2012 WL 651647, at *2 (N.D. Cal. Feb. 28, 2012); *In re Ecuador*, 2010 WL 3702427, at *2.

The Supreme Court also articulated several non-statutory factors to help district courts determine whether to exercise their discretion in granting Section 1782 applications, including "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding', (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) whether the request is 'an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the discovery is 'unduly intrusive or burdensome.'" *In re Apple Inc.*, 2012 WL 1570043, at *1 (quoting *Intel Corp.*, 542 U.S. at 264-65); *see also Cryolife, Inc. v. Tenaxis Medical, Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *1-2 (N.D. Cal. Jan. 13, 2009).

## V. ARGUMENT

Snowflake's application satisfies each of the statutory factors. In addition, each of the Supreme Court's discretionary factors articulated in *Intel Corp.* favors the granting of Snowflake's application.

### A. Snowflake's Application Meets Section 1782's Requirements.

Snowflake's request for discovery meets all three statutory requirements.

*First*, the person from whom discovery is sought, Yeti, "resides or is found" in this District. 28 U.S.C. § 1782(a). Yeti has its principal place of business in Atherton, CA, which is located within this District. *See* Zado Decl., Ex. 9 (June 24, 2020 Statement of Information for Yeti Data, Inc. listing "Mailing Address" and "Street Address of Principal Executive Office" in Atherton, California and no addresses outside California); Zado Decl. ¶¶ 5-8, Exs. 10-12.

*Second*, the discovery is sought for use in a "proceeding before a foreign tribunal." 28 U.S.C. § 1782(a). Specifically, Snowflake seeks information relating to Yeti's ability to enforce its European Union trademark "Snowflake" before the Regional Court in Düsseldorf, Germany. Grosch Decl. ¶¶ 10-18. As previous cases have recognized, the Düsseldorf Regional Court and related foreign adjudicative bodies qualify as "tribunals" for purposes of Section 1782. *See, e.g., Cryolife*, 2009 WL 88348, at *1 (permitting discovery for use in litigation pending in "Düsseldorf Regional Court in Germany"); *In re Illumina Cambridge Ltd.*, Case No. 19-mc-80215-WHO (TSH), 2019 WL 5811467, at *1 (N.D. Cal. Nov. 7, 2019) (granting Section 1782 application to take discovery for use in a patent proceeding in the Düsseldorf Regional Court); *Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) (permitting discovery for use in litigation pending in the Regional Court in Frankfurt, Germany).

*Third*, as a named party in the foreign actions, Snowflake (including Snowflake Inc. and Snowflake Computing GmbH) qualifies as an "interested" party. *See* 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]'

who may invoke § 1782"); *In re Roebers*, 2012 WL 2862122, at *3 ("there is no question that Ms. Roeber is an 'interested person' as she is a litigant in the proceeding").

Accordingly, Snowflake has satisfied the statutory requirements for an application under 28 U.S.C. § 1782.

### B. The Supreme Court's *Intel* Factors Strongly Favor Granting Snowflake's Application.

The discretionary factors identified by the Supreme Court in *Intel Corp.* weigh heavily in favor of the Court granting Snowflake's request for discovery.

#### 1. Snowflake Seeks Relevant Information That Will Assist the Foreign Court

The first *Intel* factor weighs in Snowflake's favor because the documents sought by Snowflake via this application will assist the German court in deciding whether Yeti acted in "bad faith" when obtaining its European Union trademark "Snowflake," thereby rendering Yeti's trademark invalid. In particular, evidence obtained through Section 1782 will help demonstrate whether Yeti filed its European Union trademark application in "good faith" and with an intent to use that mark in commerce, or whether Yeti acted in "bad faith" and filed its European Union trademark application intending to prevent Snowflake from using its own corporate name in commerce in Europe. *Id.*, ¶¶ 9-17. Thus, the evidence sought by this application is directly relevant to Yeti trademark infringement claim in the German Action and Snowflake's defenses thereto. *See In re Ex Parte Ontario Principals' Council*, No. 513MC80237LHKPSG, 2013 WL 6073517, at *3 (N.D. Cal. Nov. 8, 2013) (granting application under § 1782 where the discovery requested was narrowly tailored and "of obvious aid to the foreign tribunal"); *In re Ecuador*, 2010 WL 3702427, at *5 (granting application where applicant "has made a prima facie showing that the information it seeks" has "some relevance" to the foreign proceeding); *In re Google Inc.*, No. 14-MC-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014) (granting application under § 1782 for all requested discovery where the relevancy of a particular request was unclear but the applicant "at least plausibly alleged that the information sought . . . is relevant to the

international proceedings and is not unduly burdensome"); *In re Apple Inc.*, 2012 WL 1570043, at *2.[2]

Indeed, courts in this District routinely grant Section 1782 applications to take discovery for use in a foreign trademark infringement proceeding. *In re Levi Strauss & Co.*, Case No. 18-mc-80123-JSC, 2018 WL 3872790, (N.D. Cal. Aug. 15, 2018) (granting Section 1782 application to take discovery for use in a Belgian trademark infringement proceeding); *In re Int'l Judicial Assistance from the Fourth Civil Court for Intell. And Indus. Property Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (N.D. Cal. June 22, 2015) (granting Section 1782 application to take discovery for use in Turkish trademark litigation).

Conversely, courts deny Section 1782 applications based on this *Intel* factor **only** "where the foreign tribunal or government expressly says it does not want the U.S. federal court's assistance." *In re Qualcomm Inc.*, Case No. 18-mc-80104-VKD, 2018 WL 3845882, at *3-*4 (N.D. Cal. Aug. 13, 2018); *see also In re Appl. of Jt. Stock Co. Raiffeisenbank*, Case No. 16-mc-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.' "). Here, however, it is not even a close call, as numerous prior cases have recognized the receptiveness of German courts to the use of discovery obtained through Section 1782. *See, e.g., Heraeus Kulzer v. Biomet*, 633 F.3d 591, 596 (7th Cir. 2011); *Cryolife*, 2009 WL 88348, at *3; *Minatec Fin.*, 2008 WL 3884374, at *7 ("[W]e find neither any rejection nor offense taken by the German tribunals to a stateside discovery order."); *In re Illumina Cambridge Ltd.*, 2019 WL 5811467, at *4-*5 (granting Section 1782 application to take discovery for use in a German patent proceeding because of, among other factors, "the receptivity of [German] courts to evidence from the United States").

---

[2] Judge Ware's analysis in *In re Apple* similarly shows that another *Intel Corp.* discretionary factor – whether the discovery is an attempt to circumvent foreign discovery rules – also weighs in favor of granting Snowflake's application.

Accordingly, not only is there no directive expressly indicating the German court would refuse Section 1782 discovery, but the facts of this application and prior case law demonstrate the German court would welcome assistance in resolving the parties' trademark dispute in the German Action. The first *Intel* factor, therefore, weighs in favor of granting Snowflake's application.

2. No Foreign Discovery Restrictions Bar Snowflake's Requested Discovery.

The second *Intel* factor also weighs in Snowflake's favor because, while a district court may consider whether an applicant was seeking in bad faith "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," that is not the case here. *See id.* at 265; *see also In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of Section 1782 should a district court refrain from granting the assistance offered by the act.") (emphasis in original).

In particular, Snowflake is unaware of any restrictions imposed by German courts on proof-gathering procedures that would prohibit it from obtaining and introducing the discovery it seeks through Section 1782. Grosch Decl. ¶¶ 24-27. Indeed, courts in this Circuit have repeatedly held that discovery pursuant to Section 1782 for use in German proceedings is not barred by any foreign discovery restrictions. *See, e.g., In re Google Inc.*, No. 14-MC-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014) (granting application under § 1782 to take discovery for use in German proceeding where the applicant averred that the German courts "can be expected to be receptive to the information obtained by this request" and holding that there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions"); *In re Illumina Cambridge Ltd.*, 2019 WL 5811467, at *4-*5 ("U.S. courts have routinely granted applications under Section 1782 for discovery of evidence to be used in German proceedings."); *In re Ex Parte Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *2 (N.D. Cal. May 2, 2012).[3]

---

[3] *See also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097, 1101 (2d Cir. 1995) (permitting discovery under Section 1782 and observing that court "can simply refuse to consider

-9-
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

While German courts are receptive to discovery obtained through Section 1782, German procedural rules lack the same discovery tools available in the United States. Grosch Decl. ¶¶ 19-23. But Section 1782 does not require that the documents sought be discoverable in the foreign courts. *Intel Corp.*, 542 U.S. at 260-63. Instead, absent compelling proof that the German courts would reject the discovery sought by Snowflake, this factor weighs heavily in Snowflake's favor. *Heraeus Kulzer*, 633 F.3d at 597 ("Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives."); *Metallgesellschaft v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) ("Absent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782 . . . a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect." (citations and quotations omitted)).

Unsurprisingly then, U.S. district courts have routinely granted applications under Section 1782 for evidence to be used in German courts under similar circumstances. *See, e.g., Heraeus Kulzer*, 633 F.3d at 597 ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced."); *Cryolife*, 2009 WL 88348, at *3-4.

Accordingly, the second *Intel* factor also weighs in favor of granting Snowflake's application.

---

any evidence that [1782 applicant] gathers by what might be—under French procedures—an unacceptable practice"); *In re. Procter & Gamble*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ("to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States").

3. Snowflake's Discovery Is Narrowly Tailored to Avoid Undue Burden.

The third *Intel* factor also weighs in Snowflake's favor because the discovery sought via this application is not "unduly intrusive or burdensome." 542 U.S. at 265. Snowflake is requesting discovery of a small, discrete set of documents, which relate to Yeti's (i) intent in seeking a trademark on "Snowflake" in Europe, (ii) knowledge of Snowflake's business activities in Europe at that time, and (iii) past and future business plans in Europe in connection with that trademark. Upon information and belief, the universe of responsive documents is small and easily searchable, and Yeti could produce these documents to Snowflake with minimal effort. Moreover, Snowflake is willing to take steps to protect the confidentiality of any sensitive documents produced by Yeti, including via an appropriate protective order, and will cooperate with Yeti to ensure the confidentiality of those documents is maintained in the German Action. Grosch Decl. ¶¶ 28-32. Accordingly, Snowflake's subpoena places a minimal burden on Yeti, and the third *Intel* factor thus favors granting Snowflake's application.

4. Yeti is a Party to the Foreign Proceeding but German Courts Have Limited Ability To Order the Production of Documents

The fourth *Intel* factor is at most neutral, even though Yeti "is a participant in the foreign proceeding." 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid"). In particular, German courts have very limited ability to order the production of documents, and the material sought here—Yeti's knowledge and activities in connection with its application for the "Snowflake" trademark—is not within the German court's jurisdictional reach. Grosch Decl. ¶¶ 19-23. For that reason, U.S. courts frequently and routinely grant Section 1782 applications for pursuit of discovery even from entities that are parties to actions in Germany. *See, e.g.*, Qualcomm, 2018 WL 3845882, at *3 (noting that multiple courts have found this to be a neutral factor for German cases in light of German discovery law); *see also Heraeus Kulzer*, 633 F.3d at 597 (authorizing Section 1782 discovery because German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); *In re IPCom GMBH & Co. KG*, Case No. 5:14-mc-80037-EJD-

-11-
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

PSG, 2014 WL 12772090, at *2-*3 (N.D. Cal. Apr. 10, 2014) (finding that this *Intel* factor did not weigh against allowing discovery even though Apple was a party to the German litigation because "German law does not provide parties with the far-reaching discovery available in the United States."); *Cryolife*, 2009 WL 88348; *Minatec Fin.*, 2008 WL 3884374; *Illumina*, 2019 WL 5811467, at *4.

The facts of this application do not warrant making an exception, and this Court—like many others—should find that the fourth *Intel* factor is at worst neutral and certainly does not warrant denying Snowflake's application.

## VI. CONCLUSION

Snowflake seeks narrowly tailored discovery for use in a pending German proceeding. Snowflake easily satisfies the statutory requirements of Section 1782, and the *Intel Corp.* factors further strongly favor the Court exercising its discretion to grant Snowflake's application. Courts routinely permit discovery under Section 1782 for use in German proceedings, and this application should be granted as well.

Accordingly, Snowflake respectfully requests that this Court issue the proposed order attached as Appendix A to the Declaration of Ray Zado, authorizing Snowflake to serve Yeti with a subpoena in substantially the same form as Appendix B.

DATED: October 28, 2020　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ Kevin P.B. Johnson
　　　　　　　　　　　　　　　　　KEVIN P.B. JOHNSON

　　　　　　　　　　　　　　　　　*Attorneys for Applicants Snowflake Inc. and Snowflake Computing GmbH*