UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION FOR SNOWFLAKE INC.,<br><br>             Plaintiffs,<br><br>     v.<br><br>YETI DATA, INC.,<br><br>             Defendant. | Case No. 20-mc-80190-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW, AND GRANTING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Docket Nos. 20, 24, 28 |

    This suit concerns a discovery request under 28 U.S.C. § 1782 by Snowflake Inc. and Snowflake Computing GmbH (collectively, "Snowflake") to obtain discovery from Yeti Data, Inc. ("Yeti") of evidence for use in a foreign proceeding in German court. Docket No. 1. Judge Cousins granted the § 1782 application. Docket No. 7. A subpoena was served on Yeti on November 5, 2020. Yeti moved to vacate the § 1782 order, and Judge Cousins denied the Motion to Vacate the order in an oral ruling, directing Yeti to produce the requested documents within 14 days. Docket No. 19. Yeti failed to produce the documents within 14 days and, in fact, has yet to produce any documents from Snowflake's § 1782 subpoena. Yeti moved for an Emergency Motion to Stay (Docket No. 20) and filed its Objection to and Motion for *De Novo* Determination of Dispositive Matter Referred to Magistrate Judge (hereinafter "Motion for *De Novo* Review") (Docket No. 24). Snowflake moves for sanctions for Yeti's continued non-compliance with the § 1782 subpoena. Docket No. 28.

# I. BACKGROUND

## A. Procedural Background

Yeti has filed suit against Snowflake in Dusseldorf, Germany, alleging infringement of Yeti's European Union ("EU") trademark for the Snowflake mark. Grosch Decl. ¶ 10 (Docket No. 10-1). In the German complaint, Yeti accuses Snowflake of infringing Yeti's EU trademark by using the term "Snowflake" for computer software and software maintenance within the EU and, in particular, for data analysis and data warehousing (services relating to a database optimized for analysis purposes). *Id.* ¶ 11. Snowflake will assert a "bad faith" defense in German court, arguing that Yeti applied for the EU trademark without intending to use the trademark in commerce, and for the sole purpose of preventing Snowflake from using that trademark in commerce. Grosch Decl. ¶ 13 (Docket No. 3). Snowflake seeks § 1782 evidence from Yeti in support of the bad faith defense. *Id.* ¶ 15.

Snowflake applied for an order pursuant to 28 U.S.C. § 1782 granting leave to obtain targeted discovery from Yeti for use in the German proceeding. Docket No. 1. Magistrate Judge Cousins granted Snowflake's § 1782 application, finding that the statutory requirements of § 1782 had been met and that the discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) weighed in Snowflake's favor. Docket No. 7. Judge Cousins ordered the parties to meet and confer regarding the alleged burden and intrusiveness of Snowflake's § 1782 request. Docket No. 13. Snowflake submitted a letter to the Court detailing its attempts to narrow its document requests for the subpoena. Docket No. 14.

The documents which Snowflake seeks, under the narrowed subpoena, are directly relevant to its bad-faith defense in German court. For document requests numbering 1 through 5 (which seek evidence of Yeti's knowledge of, and communications about, Snowflake), one of the factors EU trademark courts use in assessing bad faith is "the fact that the applicant knows or must know that a third party is using an identical or similar sign for an identical or confusingly similar product." Grosch Decl. ¶ 20 (Docket No. 10-1). Thus, any knowledge that Yeti had of Snowflake is directly relevant to this analysis because it would tend to show that Yeti knew Snowflake was using "an identical or similar sign" before Yeti filed for its EU trademark. *Id.* For document

1    requests number 7 and 9 (which relate to Yeti's decision-making process when it filed for different
2    trademark applications in the European Union compared to the United States), a bad faith defense
3    requires an inquiry into the registrant's subjective intent, and these documents shed light on Yeti's
4    intent when filing its trademark applications in two different forums.  *Id.* ¶ 21.

5           For document requests numbering 12 through 17 (which concern Yeti's current and former
6    business operations in the EU), the documents are relevant because Snowflake's bad faith defense
7    requires it to show that Yeti registered its Snowflake mark in the EU for an improper purpose (*i.e.*,
8    for a reason other than fair competition and business profit).  *Id.* ¶ 23.  Yeti asserts that it
9    registered its mark because it had conducted business in the EU in the past and intended to restart
10   its business in the EU under the Snowflake mark.  *Id.*  Thus, documents concerning Yeti's past
11   and present business operations in the EU will help the German court discern whether that was, in
12   fact, Yeti's purpose in registering the mark.  Of course, as Snowflake notes, the absence of such
13   documents would also be probative.  *Id.*  If Yeti could produce no documents showing an intent to
14   resume business in the EU, that would potentially be an indication to the German court that its
15   motivation for registering the mark was not in good faith.  These are questions which the German
16   court will decide, and the documents Snowflake seeks are directly relevant to that inquiry.

17          Nonetheless, Yeti contends that these document requests are an unduly burdensome
18   "fishing expedition."  Docket No. 24 at 3.  In granting the § 1782 application, Judge Cousins gave
19   Yeti 30 days, from the time of service of the subpoena, to file a motion to quash or for a protective
20   order.  *See* Docket No. 7.  Snowflake's counsel electronically served the subpoena on Yeti's
21   counsel on November 5, 2020.  Docket No. 10-3 at 2-3; Docket No. 11, Ex. 6.  Yeti did not file a
22   motion to quash or for a protective order within the allotted 30-day period.  Instead, it filed a
23   "Motion to Vacate" on December 18, 2020, after the 30-day period had passed.  Docket No. 8.

24          On February 3, 2021, Judge Cousins held a motion hearing on the Motion to Vacate, and
25   denied the motion, in an oral ruling, on two grounds: (1) it was not timely filed (since it came after
26   the 30 days Yeti had been given to file a motion to quash the § 1782 subpoena or for a protective
27   order); and (2) in any event, Judge Cousins found that the statutory and discretionary factors
28   remained in Snowflake's favor (though he accepted Snowflake's narrowing of the document

3

requests, as described in Docket No. 14). *See* transcript at 14-15 (Docket No. 19). Judge Cousins ordered the § 1782 documents to be produced within 14 days of the hearing, by February 17, 2021; and he stated that Yeti also had 14 days to file an objection with this Court regarding the denial of the Motion to Vacate. *See id.* at 15.

On February 11, 2021, Yeti moved for an interim stay of Judge Cousins' February 3 order pending this Court's resolution of its Objection and Motion for *De Novo* Review of the Order; or, in the alternative, pending review of the order by the Ninth Circuit. Motion for Interim Stay, Docket No. 20. Yeti stated that it would file its Objection/Motion for *De Novo* Review by February 17th and argued that it would be irreparably harmed if forced to comply with the February 3 order without first obtaining Court review. *Id.* at 2. Yeti subsequently filed its Objection and Motion for *De Novo* Review of the Order on February 17, 2021, the day that Judge Cousins set for the production of the § 1782 documents and the last day that Yeti had to object to the February 3 order. Docket No. 24.

Snowflake subsequently filed a Motion for Sanctions and a Motion to Shorten Time to Hear Motion for Sanctions. Docket Nos. 28 and 29. Snowflake moved to expedite the hearing on the ground that it needs the § 1782 documents for a May 5, 2021 hearing in German court and that it must submit that evidence roughly one week before the May 5 hearing. Motion to Shorten Time at 2 n.1 (Docket No. 29). Snowflake noted that Yeti has yet to produce a single document from the § 1782 subpoena of November 5, 2020. *Id.* at 1-2. This Court granted the motion and advanced the hearing on the Motion for Sanctions to March 11, 2021. Docket No. 33.

## II.     DISCUSSION

A.     <u>Standard of Review</u>

As a threshold matter, the Court must decide on the standard of review for Judge Cousins' order denying Yeti's Motion to Vacate. Docket No. 19. The standard of review also impacts whether Yeti's non-compliance with Judge Cousins' order is sanctionable.

Under the Federal Magistrates Act, 28 U.S.C. § 631, the Court may refer certain non-dispositive pretrial matters to a Magistrate Judge for a binding final determination, which is reviewed under a clearly erroneous standard of review. *See* 28 U.S.C. § 636(b)(1)(A). The Court

4

may also refer certain case-dispositive motions for an evidentiary hearing and/or a non-binding report and recommendation**,** which is scrutinized under a *de novo* standard of review.  28 U.S.C. § 636(b)(1)(B)-(C).

Under Rule 37, where a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," for instance, the court may "treat[] as contempt of court the failure to obey" that order.  Fed. R. Civ. P. 37(b)(2)(A).  Further, "[i]nstead of or in addition to" those orders, "the court *must* order the disobedient party … to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  *See LegalForce RAPC Worldwide P.C. v. Demassa*, No. 18-cv-00043-MMC (TSH), 2019 U.S. Dist. LEXIS 182912, at *11 (N.D. Cal. Oct. 22, 2019) ("[m]ost remedies 'for dilatory conduct during discovery proceedings' are discretionary" but the remedy prescribed by Rule 37(b)(2)(C) is not) (citing *Bollow v. Fed. Res. Bank*, 650 F.2d 1093, 1102 (9th Cir. 1981)).

In denying Yeti's Motion to Vacate, Judge Cousins gave Yeti 14 days to turn over the requested documents to Snowflake.  *See* Transcript at 15 ("[a]s far as the timing of production, I order the materials to be produced within 14 days of today. That's by February 17th, 2021") (Docket No. 19).  At the motion hearing on the motions presently before this Court, both parties acknowledged that Yeti has yet to turn over any documents to Snowflake.  Thus, if the Court finds that Judge Cousins' order denying Yeti's Motion to Vacate is a non-dispositive, binding ruling, it has the power to sanction Yeti under Rule 37.

The Ninth Circuit has treated a § 1782 order by a Magistrate Judge as a non-dispositive pretrial matter with binding effect.  *See Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) (reviewing the Magistrate Judge's decision to deny much of the relief sought by the § 1782 applicant for abuse of discretion).  As the district court noted in *Nikon Corp. v. GlobalFoundries U.S., Inc.*, No. 17-mc-80071-BLF, 2017 U.S. Dist. LEXIS 171949 (N.D. Cal. Oct. 16, 2017), many courts in this district have relied on *Four Pillars* to conclude that an order on a § 1782 application is a non-dispositive matter that is binding and subject to clear

5

error review under § 636(b)(1)(A).  *See id.* at *5-6 (collecting cases).  The Court follows the holding in *Four Pillars* and treats Judge Cousins' ruling on Yeti's Motion to Vacate as a binding ruling on a non-dispositive matter.

The Court's finding on this matter impacts two separate motions.  First, with respect to Yeti's self-styled Motion for *De Novo* Review (Docket No. 24), the Court reviews Judge Cousins' order denying Yeti's Motion to Vacate under a clearly erroneous standard of review.  As discussed further *infra*, the Court finds that Judge Cousins did not err in finding that the statutory and discretionary factors weighed in Snowflake's favor.  However, the Court notes that it would have come to the same conclusion had it reviewed Judge Cousins' decision under a *de novo* standard of review.  Second, with respect to Snowflake's Motion for Sanctions (Docket No. 28), the Court finds that Judge Cousins' order denying Yeti's Motion to Vacate has the power of an order under Rule 37, and thus sanctions may be issued for non-compliance therewith.

Judge Cousins' ruling that Yeti's Motion to Vacate was untimely is correct.  On November 4, 2020, Judge Cousins issued an order granting the § 1782 application and providing that Yeti could file a motion to quash or for a protective order within 30 days of being served with the subpoena.  Docket No. 7.  Snowflake served the subpoena on Yeti on November 5, 2020.  Docket No. 11, Ex. 6.  On December 18, 2020, Yeti filed a self-styled Motion to Vacate that was (1) untimely, because it came after the prescribed 30-day period, and (2) improperly labeled, because it was neither a motion to quash nor a motion for a protective order.  Docket Nos. 8 and 9.  Judge Cousins was correct to find that these procedural defects provided a basis for denying the motion.

Even if this Court were to disregard Judge Cousins' ruling on timeliness, it affirms his ruling on the merits.

B.      Scope of Discovery in § 1782 Applications

At the motion hearing, Yeti argued that it need not comply with *any* of Snowflake's document requests, even the ones that are undisputedly relevant to Snowflake's bad faith defense in German court, until the *entire* subpoena is narrowed.  Yeti cites no authority for the proposition that a party need not respond to any portion of a discovery request if any other portion of it is overbroad or improper.  Instead, Yeti argues that the entirety of the § 1782 request is invalid.  Yeti

contends that the § 1782 document request fails to honor the discovery rules of the German tribunal in which evidence is sought to be used. Yeti argues Snowflake must pinpoint specific documents under the German Code of Civil Procedure and not promulgate requests seeking categories of documents, as is common under the Federal Rules of Civil Procedure.

However, no court has accepted Yeti's argument that a § 1782 discovery request must adhere to the procedural rules of the foreign tribunal where the evidence is to be used. Nor has any court accepted its argument that a § 1782 discovery request is not governed by the Federal Rules of Civil Procedure.[1] The Seventh Circuit addressed this argument in *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011), which involved a § 1782 request seeking documents for use in a trade secret lawsuit pending in German court. *Id.* at 593-94. The suit was between rival manufacturers of bone cement (Plaintiff Heraeus and Defendant Biomet). *Id.* at 595. Judge Posner noted that "[a] party to a German lawsuit cannot demand categories of documents from his opponent. All he can demand are documents that he is able to identify specifically—individually, not by category." *Id.* at 596. However, in the absence of a contrary order, the discovery was governed by the Federal Rules of Civil Procedure, and Judge Posner found:

> "no indication that the German court in which Heraeus's suit against Biomet is pending would refuse to admit evidence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering; no indication that the German court is worried about being swamped by Heraeus's submitting excessive discovery fruits to it; and no indication that the German court believes that Heraeus's discovery requests if allowed would impose an undue burden on Biomet."

*Id.* A party's recourse to discovery permissible under U.S. rules does not indicate an intention to

---

[1] To be clear, § 1782 provides a mechanism by which the Judge granting the application may elect to follow foreign discovery procedures. It provides that an order granting a § 1782 application "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782. However, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.* Judge Cousins directed that discovery take place in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. Docket No. 7.

7

circumvent foreign proof-gathering restrictions and thus is not a basis for denying a § 1782 request. *See id.* at 597 ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced").

Here, as in *Heraeus Kulzer*, the German court remains free to exercise its normal evidentiary rules to exclude any documents which are irrelevant to Snowflake's bad faith defense in the trademark suit. A document which is discoverable under the Federal Rules is still subject to the evidentiary rules of a foreign tribunal when introduced in foreign proceedings. There is no evidence that the German court is unreceptive to this evidence simply because U.S. procedural rules allow for broader discovery requests. *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) ("[i]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery") (citing *In re Ex Parte App. Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911, 2016 WL 1161568, *4 (N.D. Cal. Mar. 4, 2016)). In sum, § 1782 does not prevent a party from seeking discovery of materials in U.S. court that are undiscoverable in German court. *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416, at *10 (N.D. Cal. Jan. 13, 2009) ("there is no requirement under § 1782 that the requested information would be discoverable under German law, and the mere fact that the discovery is unavailable under foreign law is not a basis for denying its application") (internal quotation marks omitted).

This follows from the fact that § 1782 makes reference to and thus incorporates the Federal Rules of Civil Procedure. 28 U.S.C. § 1782 provides as follows:

> "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested

8

> person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. *To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure*.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."

28 U.S.C. § 1782 (emphasis added).

Here, Judge Cousins properly applied the Federal Rules of Civil Procedure in directing Yeti to respond to Snowflake's subpoena pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. Docket No. 7. Yeti had an opportunity to quash or modify the subpoena pursuant to Rule 45, and it failed to do so within the prescribed 30-day period. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) ("[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden"). The Federal Rules of Civil Procedure do not require that parties pinpoint specific documents in their subpoenas, and Snowflake was not required to do so here.

C.   Application of the Statutory and Discretionary Factors

As Yeti's facial objection to the § 1782 request is baseless, the Court examines the substantive standard of § 1782 in reviewing Judge Cousins' order. Section 1782 permits district courts to authorize discovery where three requirements are satisfied: "(1) the person from whom the discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding in a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).

In *Intel*, the Supreme Court developed a number of discretionary factors which bear consideration in ruling on a § 1782(a) request. First, "[w]hen the person from whom discovery is sought is a participant in the foreign proceeding … the need for § 1782(a) aid generally is not as

9

apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence … [i]n contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Second, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U. S. federal-court judicial assistance." *Id.* The third *Intel* factor asks whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65. Fourth, "unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* at 265.

With respect to the statutory factors, Yeti argues that Snowflake's § 1782 request is "exploratory in nature" and seeks documents that are not "for use" in the German proceeding (the second requirement of § 1782). Mot. at 6-7. Yeti argues that the documents are actually for Snowflake's use in the parties' trademark proceedings in the U.S. *Id. See Yeti Data, Inc. v. Snowflake, Inc.*, No. CV 20-6595 PA (AFMx), 2020 U.S. Dist. LEXIS 247752 (C.D. Cal. Nov. 9, 2020) (suit brought by Yeti against Snowflake for trademark infringement and unfair competition, which was transferred to the Northern District of California). Yeti notes that Snowflake did not assert its bad faith defense in German court until November 16, 2020, which was after Judge Cousins granted the § 1782 request on November 4, 2020. *Id.* at 5. Thus, Yeti contends that the evidence is not "for use" in a German proceeding, because the bad faith defense had not been raised by Snowflake at the time its § 1782 application was made in U.S. court. Mot. at 12 (citing *Pioneer Corp. v. Technicolor, Inc.*, No. LA CV18-04524 JAK (SSx), 2018 U.S. Dist. LEXIS 221308, at *28 (C.D. Cal. Sep. 12, 2018) (finding no clear error in the Magistrate Judge's determination that the § 1782 request was a "fishing expedition that would impose undue burdens on those to whom the request was made")).

But *Pioneer* is inapposite. The evidence sought in *Pioneer* was "not … relevant to the core issues presented in the German Action" and thus the district court upheld the Magistrate Judge's

determination that narrowing the request could not cure this flaw in the § 1782 application. *Id.* at *30. Here, by contrast, the documents which Snowflake seeks are directly relevant to its bad faith defense, which it intended to, and has raised, in German Court. *See generally* Grosch Decl. (Docket No. 10-1) (describing in detail how each of Snowflake's document requests relates to the elements of the bad faith defense in German court). That Snowflake did not officially raise the bad faith defense in German court until November 16, 2020 is not legally dispositive. Snowflake's § 1782 application reasonably contemplated that Snowflake would eventually use the evidence it sought from Yeti for its bad faith defense in German court. *Cf. Intel*, 542 U.S. at 259 (adjudicative proceedings need not be pending or imminent, so long as they are "within reasonable contemplation") (internal quotation marks omitted); *Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) (under § 1782's "for use" requirement, "the relevant question is whether at the time the evidence is sought . . . the evidence is *eventually to be used* in a foreign proceeding" and whether such proceedings "were *within reasonable contemplation* at the time the § 1782 application was filed") (emphasis added); *Med. Corp. H&S v. Defendant*, No. 19-mc-80107-SVK, 2019 U.S. Dist. LEXIS 90977, at *4-5 (N.D. Cal. May 30, 2019) (proceeding in a foreign tribunal was within reasonable contemplation where the § 1782 applicant "intend[ed] to file" suit in Japan after the discovery was obtained). Snowflake reasonably contemplated that the evidence obtained from Yeti would be "for use" in German court in support of its bad faith defense. Judge Cousins appropriately found that this statutory factor weighed in Snowflake's favor.[2]

Turning to the discretionary factors, the first factor weighs in Yeti's favor because it is both the target of the § 1782 application and a party to the German proceedings. Mot. at 17-18. *See Intel*, 542 U.S. at 264. Yeti argues that the second *Intel* factor also weighs in its favor because the German tribunal is non-receptive to U.S. assistance. Mot. at 18. Yeti notes that Snowflake initially faced an October 16, 2020 deadline to file its defenses in German court, and the German

---

[2] Yeti does not dispute that the other two statutory requirements (*i.e.*, that Yeti "resides or is found" in the judicial district where the § 1782 application is made and that Snowflake is an "interested person" in the German litigation) are met. *Khrapunov*, 931 F.3d at 925.

11

court rejected its request for a three-month extension of that deadline (and instead permitted only a one-month extension to November 16, 2020) because its bad faith defense was in an "*ex ante* stage." Mot. at 4-5. This argument is unpersuasive. As Snowflake notes, German civil proceedings are typically not delayed to accommodate § 1782 discovery applications, and evidence obtained from § 1782 subpoenas may still be introduced at a later stage of the German proceedings.[3] Grosch Decl. ¶ 14 (Docket No. 10-1). Further, the German presiding judge has expressed no opinion about the admissibility or relevance of any evidence which Snowflake might submit in support of its bad faith defense. *Id.* ¶ 17. As a matter of law and practice, Yeti has not demonstrated that German courts *a priori* oppose § 1782 discovery requests and has not shown why German courts cannot handle any objections to the evidence during the hearing and in the decision. *Id.* ¶ 18. *Cf. Palantir Techs., Inc.*, 415 F. Supp. 3d at 915 ("[t]he second *Intel* factor … favors granting the application … [w]hile there is no indication that the German court will be receptive the 1782 discovery, there is no indication that it would be hostile to such discovery and the German court is in the best position to make admissibility determinations"); *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018) ("*Intel* does not place a requirement on American courts to adjudicate the admissibility of evidence in foreign tribunals"). Thus, the German court's silence on the admissibility of Snowflake's § 1782 evidence does not indicate non-receptivity under the second *Intel* factor. Further, Snowflake has until April 28, 2021 (one week before the May 5, 2021 hearing) to submit the § 1782 evidence in German court, which means that the "character" of the German proceedings favors granting Snowflake's application under the second *Intel* factor. *Intel*, 542 U.S. at 264; Grosch Decl. ¶ 17.

Under the third *Intel* factor, Yeti contends that Snowflake's § 1782 request is an attempt to circumvent the German court's proof-gathering restrictions because Snowflake filed its § 1782 application in U.S. court before asserting its bad faith defense in German court. Mot. at 19. As discussed *supra*, § 1782 merely requires that a claim or proceeding in a foreign jurisdiction be

---

[3] According to German procedural rules (Section 132, paragraph 1 of the German Code of Civil Procedure) Snowflake is permitted to submit new evidence up until one week before the May 5, 2021 hearing without seeking further leave of court. Grosch Decl. ¶ 17.

12

"reasonably contemplated" at the time the application is made. *Intel*, 542 U.S. at 259. There is also no indication that the § 1782 request sought to circumvent German evidentiary rules. Snowflake timely filed its bad faith defense in German court on November 16, 2020, and no specific permission or leave is needed from the German court to introduce evidence in support of that bad faith defense, so long as such evidence is filed by the deadline of April 28, 2021.[4] Grosch Decl. ¶¶ 13,14.

The fourth *Intel* factor considers whether the § 1782 application is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Yeti argues that Snowflake's request poses an undue burden because Snowflake seeks information regarding Yeti's U.S. trademark actions, and this information could be used in the U.S. action. Mot. at 21 (citing Docket No. 4, Appendix B, Request 9 (request for "[a]ll documents and communications regarding YETI's decision to apply for different trademarks in the European Union compared to the United States")). However, Snowflake significantly narrowed its § 1782 subpoena requests in response to Yeti's complaints about their scope and burden. Snowflake dropped its document requests relating to Yeti's trademark applications before the USPTO. *See* Docket No. 14 at 1-2 (dropping request Nos. 6, 8, and 10-11, which relate to, *inter alia*, Yeti's applications before the USPTO and its decision to apply for a mark styled as "Yeti Snowflake" in the United States). Additionally, Judge Cousins found that the parties engaged in a "good-faith negotiation process" and that Snowflake's proposals in Docket 14 are "reasonably calculated to address the burden concerns." *See* transcript at 14 (Docket No. 19). Judge Cousins appropriately analyzed the fourth *Intel* factor.

In sum, the first *Intel* factor weighs in Yeti's favor, but the other three factors weigh in Snowflake's favor. Judge Cousins appropriately considered these factors in his oral ruling, and

---

[4] Yeti contends that the § 1782 request is an attempt to prematurely and improperly obtain documents before discovery commences in the U.S. action. Mot. at 20. However, Yeti could have sought a protective order limiting the § 1782 requests to documents that could be used in the German action only. *See* Docket No. 7 ("Respondents may file a motion to quash or for a protective order but must do so within 30 days of being served with the subpoena"). It did not do so within the prescribed 30 days. Further, Snowflake dropped its document requests related to Yeti's trademark application before the USPTO in an effort to ease the burden of the § 1782 subpoena. *See* Docket No. 14 at 1-2 (dropping document request Nos. 6, 8, and 10-11, which relate to, *inter alia*, Yeti's applications before the USPTO and its decision to apply for a mark styled as "Yeti Snowflake" in the United States).

13

his conclusions were correct whether under a *de novo* or clearly erroneous standard of review.[5] Yeti's Motion for *De Novo* review is denied.

D. <u>Snowflake's Motion for Sanctions</u>

Because Judge Cousins' order on Snowflake's § 1782 motion was a binding order on a non-dispositive pre-trial matter, Yeti's non-compliance is sanctionable under Rule 37. *See* Fed. R. Civ. P. 37(b)(2)(A) ("[i]f a party … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders," for instance, "treating as contempt of court the failure to obey any order"). *Cf. Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018) ("[i]n the context of Rule 37(b) sanctions, we read broadly the term 'order' under Rule 37(a) … [b]oth the advisory committee notes and case law suggest that Rule 37's requirement for an 'order' should . . . include any order relating to discovery") (internal quotations and citations omitted). The Court must order Yeti to pay the "the reasonable expenses, including attorney's fees" of Snowflake, unless Yeti's failure to obey was "substantially justified" or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C).

The Court finds that Yeti was not substantially justified in disobeying Judge Cousins' order granting Snowflake's § 1782 application. Docket Nos. 7, 19. Yeti's behavior has been less than forthright. Yeti has refused to produce a single document to Snowflake, even those whose relevance to the German proceeding it does not contest. Yeti's argument that it need not produce a single document until the entire subpoena is significantly narrowed fails on its face, for the reasons discussed *supra*. Yeti was served with the subpoena on November 5, 2020, and more than four months have passed without a single document produced. During that time, Yeti has been afforded numerous opportunities to narrow the scope of the subpoena. It missed the initial 30-day

---

[5] Yeti also argues that Snowflake's application contravenes the twin aims of § 1782. Mot. at 23-24. § 1782's twin aims are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77, 79 (2d Cir. 1997). Yeti argues that this application does not promote efficiency or reciprocity because the German court has "clearly indicated" that it does not approve of the § 1782 discovery. Mot. at 24. As discussed s*upra*, the German court has not expressed an opinion on the relevancy and admissibility of the evidence Snowflake seeks in its § 1782 application, and its silence on the matter cannot be construed as disapproval. Grosch Decl. ¶¶ 17-18.

14

window, and Judge Cousins still heard Yeti's Motion to Vacate (despite the fact that it was not timely filed and was styled a Motion to Vacate rather than a Motion to Quash) and denied that motion on the merits. Docket No. 19. Yeti has had its arguments heard in court, and yet it still refuses to turn over any documents whatsoever. This is evidence of foot-dragging by Yeti, which shows bad faith and supports the Court's conclusion that Yeti did not have a substantial justification for disobeying a court order.

Yeti also misrepresented the scope of Snowflake's document requests. At the motion hearing, Yeti informed the Court that "Snowflake" in the document requests encompasses the *term* "Snowflake," and not simply the business entities Snowflake Inc. and Snowflake Computing GmbH. Because Yeti refers to itself as "Yeti Snowflake," this document request would have required Yeti to turn over most, if not all, of the documents in its possession, even those not related to Snowflake, Inc., the plaintiff herein. In reality, the original § 1782 subpoena defines "Snowflake" to mean "Snowflake Inc. and any predecessor, successor, division, subsidiary, parent or related company thereof (including Snowflake Computing GmbH)." Docket No. 4-3, Appendix B, Ex. 1 ("Definitions and Instructions"). Snowflake narrowed that definition even further, in an effort to ease the burden of the document request. The narrowed definition defines Snowflake as follows: "'SNOWFLAKE'" means Snowflake Inc., Snowflake Computing, Inc., Snowflake Computing U.K. Limited, or Snowflake Computing GmbH." Docket No. 14. Yeti's representations to the Court about the scope of the document requests were false and misleading.

Additionally, Yeti incorrectly argued that Snowflake did not properly serve Yeti with the Court's § 1782 Order after it was issued on November 4, 2020. Mot. at 5. Yeti argues that it was justified in missing the 30-day deadline to file a motion to quash or for a protective order because it purportedly did not receive any communication about Judge Cousins' order granting the § 1782 application until December 8, 2020. *Id.* at 6. The parties' exhibits and email threads belie that contention. Snowflake's counsel reached out to Yeti's counsel about the pending § 1782 application with Judge Cousins and asked whether Yeti's counsel was "authorized and agree[d] to accept electronic service of the attached [the § 1782 application filed with the Court] on behalf of Yeti." Docket No. 10-3 at 5. Yeti's counsel confirmed, on November 4, 2020, that he was

15

authorized to accept email service of process for the § 1782 application. *Id.* at 3; Docket No. 11, Ex. 6; Docket No. 12 at 3. On November 5, 2020, the day after the November 4, 2020 order by Judge Cousins granting the § 1782 application, Snowflake's counsel electronically served on Yeti's counsel the order granting the § 1782 application, as well as a copy of Snowflake's subpoena. Docket No. 10-3 at 2-3; Docket No. 11, Ex. 6. On December 8, 2020, Snowflake's counsel notified Yeti's counsel that the 30-day deadline by which to move to quash the subpoena or file a protective order had passed and asked for compliance with the subpoena. Docket No. 10-3 at 2; Docket No. 11, Ex. 6. Yeti refused to comply with the subpoena and has not turned over any documents to Snowflake. The Court finds that this conduct is further evidence of foot-dragging and bad faith by Yeti, which reinforces the Court's conclusion that Yeti was not substantially justified in refusing to comply with Judge Cousins' § 1782 discovery order.

For these reasons, the Court **GRANTS** Snowflake's Motion for Sanctions, which asks for a Court order directing Yeti to (1) pay Snowflake its reasonable attorney fees incurred in bringing this motion and (2) show cause why it should not be held in civil contempt and ordered to pay coercive sanctions of $10,000 per day until it complies with Judge Cousins' February 3, 2021 order.

### III.    CONCLUSION

The Court **DENIES** Yeti's Motion for *De Novo* Review (Docket No. 24) and **DENIES** Yeti's Motion to Stay (Docket No. 20). The Court **ORDERS** Yeti to produce the documents requested by Snowflake in the § 1782 subpoena, as narrowed by Docket No. 14, no later than **5:00 p.m. PDT, March 26, 2021**.

The Court **GRANTS** Snowflake's Motion for Sanctions (Docket No. 28), and **ORDERS** Yeti to: (1) pay Snowflake its reasonable attorney fees incurred in bringing its Motion for Sanctions in an amount to be determined after briefing as set forth below, and (2) **show cause** as to why it should not be held in contempt and ordered to pay coercive sanctions of **$10,000 per day** after March 26, 2021 for each day it fails to comply with this Order to produce documents.

///

///

16

Snowflake shall file its fee motion and supporting papers by **April 1, 2021**. Yeti shall file its opposition by **April 8, 2021**.

This order disposes of Docket Nos. 20, 24, and 28.

**IT IS SO ORDERED**.

Dated: March 18, 2021

_____
EDWARD M. CHEN
United States District Judge

17